Ralph Edward JONES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–88–318.

Court of Criminal Appeals of Oklahoma.

Oct. 13, 1989.

Mark Hammons, Hammons, Hammons and Taylor, El Reno, Oklahoma, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Chief, Crim. Div., Silas R. Lyman, Legal Intern, Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

Appellant, Ralph Edward Jones, was tried by jury and convicted of Lewd Molestation (21 O.S.1981, § 1123), in Seminole County District Court, before the Honorable Gary R. Brown, District Judge. The jury set punishment at fifteen (15) years

imprisonment. Judgment and sentence was imposed accordingly. We affirm.

Carla Jones, wife of appellant, had three children from a previous marriage to Larry Dixon. The children, two girls and a boy, ranged from five to eleven years of age. For a short period after the marriage of Carla Jones and appellant, the two girls lived with Larry Dixon, their natural father, but later moved in with their mother and appellant. Shortly thereafter, appellant molested the oldest girl, S.D., then eight years old, and this abuse continued for nearly three years. The assaults occurred several times every week.

In March, 1985, Carla Jones saw appellant fondling S.D., but when she confronted him, he denied the incident. He and S.D. began to argue about the incident because S.D. told Carla that appellant was touching her. Carla threatened to leave him, but appellant retrieved a pistol, held it to Carla's head, and told her he would kill her if she left. After this confrontation, Carla Jones testified she was afraid to leave. The victim, S.D., testified that the sexual assaults continued.

A friend of the family, Linda Carpenter, filed a complaint with the Department of Human Services. The basis of the complaint was information she had received that S.D. was physically and sexually abused by appellant. Carpenter testified that she received a note from S.D. In the note, S.D. asked if she could spend the weekend with Carpenter because appellant had hit her and hurt her leg. Carpenter went to appellant's house, and asked if S.D. could spend the weekend with her. Carpenter showed the note to Carla Jones, who told her appellant had thrown a wrench at S.D., leaving a large bruise.

Carpenter told Carla that she had filed a complaint with D.H.S. and Carla asked if she could talk with the D.H.S. Paula Moradi, a child welfare worker at D.H.S., interviewed Carla, and asked to speak with S.D. Carpenter agreed to pick S.D. up from school. When S.D. got into the car, Carpenter told her that she was taking her to talk with someone at D.H.S. Carpenter testified that S.D. appeared relieved and

began telling her about the repeated sexual assaults. S.D. told Carpenter "thank God, it's over with," and that she had been afraid to report the assaults because she thought appellant would kill her mother.

During the interview with Moradi, S.D. told her of the repeated sexual assaults, and described in detail the happenings of the past two years. When asked why she did not tell anyone about the molestation, she said she was afraid appellant would kill her and her mother. A medical examination revealed several tears in S.D.'s hymen. The medical expert testified these tears were at least one month old, and were consistent with sexual abuse.

Appellant testified that he had not molested S.D., but that S.D. had complained of being molested by her natural father, Larry Dixon. He testified that S.D. accused him of molestation because she was mad at him for disciplining her.

As his first assignment of error, appellant asserts the admission of hearsay statements under 12 O.S.Supp.1986, § 2803.1 was violative of his rights to confrontation and due process. He also argues that even if the statements were not in violation of this constitutional rights, they were inadmissible because their prejudicial effect outweighed their probative value.

■ Addressing first appellant's argument regarding the alleged violation of his right to confront witnesses, the statements complained of are those made by the victim, S.D., to various people about the sexual assaults. The Sixth and Fourteenth Amendments guarantee a defendant's right to confrontation at trial. *Nelson v. O'Neil,* 402 U.S. 622, 626, 91 S.Ct. 1723, 1726, 29 L.Ed.2d 222 (1971). So long as the declarant can be cross-examined at trial, the Confrontation Clause is not violated:

> [V]iewed historically ... there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. Moreover, where the declarant is not absent, but is present to testify and to submit to cross-examina-

tion, our cases, if anything support the conclusion that the admission of his out-of-court statements does not create a confrontation problem. (Citations omitted)

*Id.* at 626–27, 91 S.Ct. at 1726 (*quoting California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970)). In the present case, the victim, S.D., testified and was subject to cross-examination. We find no violation of appellant's right of confrontation.

Appellant also claims that Section 2803.1 is unconstitutional as it is violative of his due process guarantee of fundamental fairness. He urges Section 2803.1 is fundamentally unfair because it "constitutes a blanket authorization to admit statements made by a child provided only that the 'circumstances of the statement provide sufficient indicia of reliability.' " *Brief of Appellant,* at 6. We disagree.

■ Initially, we note that this Court has recently upheld the validity of Section 2803.1. *Drake v. State,* 761 P.2d 879, 883 (Okla.Crim.App.1988). Section 2803.1 requires first that the trial court hold a hearing outside the presence of the jury. In this hearing, the trial court must determine whether the time, content and circumstances of the statement provide sufficient indicia of reliability so as to establish the trustworthiness of the statement. *See State v. Ryan,* 103 Wash.2d 165, 691 P.2d 197, 204 (1984). Furthermore, the child must testify at trial or be declared unavailable as a witness. The safeguards of the statute protect not only the "trustworthiness" of the statement, but also a defendant's right to cross-examination. Thus, we cannot say that the procedures in Section 2803.1 are violative of the Fourteenth Amendment "protection against criminal trials in state courts conducted in such a manner as amounts to a disregard of 'that fundamental fairness essential to the very concept of justice,' and 'necessarily prevent[s] a fair trial.' " *Lyons v. Oklahoma,* 322 U.S. 596, 605, 64 S.Ct. 1208, 1213, 88 L.Ed. 1481 (1944) (*quoting Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1962).

■ Appellant also asserts the testimony was unfairly prejudicial due to its cumulative nature. While we agree that the "needless duplication" of evidence can result in error, such an error did not occur in the case at bar. *See President v. State*, 602 P.2d 222, 226 (Okla.Crim.App.1979). In the present case, each witness' testimony was relevant and necessary to explain the circumstances surrounding the sexual abuse. For example, Dr. Severance testified that she examined S.D. with the knowledge that S.D. was a possible victim of sexual abuse. She knew of this possibility because of S.D.'s statements. The social worker testified the complaint she filed with the district attorney's office was based on statements made by S.D. and other family members. Carpenter testified that she became aware of the problem because of S.D.'s note. Although S.D.'s statements were repeated in these different contexts, we hold that the testimony of each witness was necessary, and therefore the repetition was not "needless duplication." This assignment is without merit.

Next, appellant claims that admission of "other crimes" evidence resulted in prejudicial error. Prior to trial, the State gave notice of its intent to introduce at trial evidence regarding appellant's various assaults on family members and his continuing sexual abuse of S.D. At trial, appellant did not object to the introduction of this evidence. Appellant urges that his failure to object does not preclude reversal insofar as this amounted to fundamental error.

We address first the question of whether evidence of physical and verbal abuse of family members was admissible at trial. Appellant makes specific reference to the evidence regarding the incident wherein appellant threatened both Carla and S.D. with a gun.

In *Marks v. State*, 654 P.2d 652, 654–55 (Okla.Crim.App.1982), the "common scheme or plan" exception listed in 12 O.S. 1981, § 2404(B) was discussed. To fall within this exception, there must be a visible connection between the crime charged and the "other crime" sought to be intro-

duced. A visual connection is made when it is established that the one crime was committed to prepare the way for the second crime. For example, in *Huddleston v. State*, 695 P.2d 8, 11 (Okla.Crim.App.1985), this Court held that evidence of a rape prior to the one charged was admissible under the "common scheme or plan" exception:

> We believe that under the circumstances of this case, the rape of N. at Christmas was the culmination of the September–October incident. The prior incident involved fondling of N., and appellant learned that N. would not tell her mother if appellant asked her to remain silent. Under these circumstances, we find that this evidence 'tends to support the conclusion that there was a plan or system which embraced that and the crime for which [appellant was] charged,' in that 'the [prior] crime [was] committed to prepare the way for another and the commission of the second crime [was] made to depend on the first.' (Citations Omitted)

■ In the present case, appellant threatened to kill his wife and S.D. if they left. They were afraid to leave or to report his actions to the authorities because of his abuse. This allowed appellant to continue his sexual abuse of S.D. We find that his verbal and physical abuse of his family falls within the "common scheme or plan" exception as it "prepared the way for another" crime. *Id.* at 11. Thus, this evidence was admissible.

■ Appellant also complains of the introduction of the continuing sexual abuse suffered by S.D. The State urges that the evidence fell within the rule set forth in *Huddleston*, 695 P.2d at 11:

> [W]hen a child of tender years is under the exclusive domination of one parent for a definite period of time and submits to sexual acts at that parent's demand, the separate acts of abuse become one transaction within the meaning of the rule....

Recently, in *Drake v. State*, 761 P.2d 879, 881–82 (Okla.Crim.App.1988), this Court upheld a conviction based on nearly identi-

cal facts. The defendant was charged with First Degree Rape and Lewd Molestation. At trial, evidence was introduced which showed that the abuse had occurred over a period of three years, and that the mother had been aware of the abuse for quite some time. This Court stated that *Huddleston* applied, thereby upholding the admission of this evidence. In the present case, the State gave notice of its intent to introduce the three year pattern of abuse. Such evidence was introduced at trial. Under the rule of *Huddleston* and *Drake*, this evidence was admissible. This proposition is without merit.

■ Next, appellant asserts that other evidence introduced at trial was not relevant, but was introduced only to prejudice his rights. None of this evidence was objected to by defense counsel. Absent objection, this Court will review only for fundamental error. *Cunningham v. State*, 748 P.2d 520, 523 (Okla.Crim.App.1987). Although we question the relevancy of some of this evidence, we do not believe the error, if any, was fundamental. This assignment is without merit.

During cross-examination of appellant, the prosecutor asked if appellant had ever hit his wife or held a gun to her head. The appellant replied in the negative. After the defense rested, the State called a rebuttal witness who testified she and her husband were present on one occasion when appellant beat his wife and threatened them when they attempted to pull him away from his wife. Appellant argues that this was improper impeachment insofar as it was a "wrongful act wholly collateral to the one for which he stood trial...." *Brief of Appellant*, at 25. This testimony was not objected to by defense counsel.

■ We agree that the introduction of such evidence was error as it was extrinsic proof of a specific instance of conduct introduced for impeachment purposes. *See* 12 O.S.1981, § 2608(B); *Nevaquaya v. State*, 614 P.2d 82, 83 (Okla.Crim.App. 1980). Although it is discretionary with the trial court to allow cross-examination into relevant instances of conduct which are probative of truthfulness, "if the witness denies the impeaching conduct, counsel is bound by the answer given and may not offer extrinsic evidence to contradict the witness." *Woods v. State*, 657 P.2d 180, 182 (Okla.Crim.App.1983).

■ Although introduction of such evidence was error, we find the error was harmless beyond a reasonable doubt and did not contribute to appellant's conviction. *Chapman v. California*, 386 U.S. 18, 24–26, 87 S.Ct. 824, 828–829, 17 L.Ed.2d 705 (1967). The State presented abundant evidence, including medical testimony, which established the guilt of appellant. Furthermore, appellant was not given the maximum sentence. This assignment is without merit.

■ Appellant also directs attention to two comments made by the prosecutor during closing arguments, which reiterated S.D.'s statement, "thank God, it's over with." No objection was made, thus we will review only for fundamental error. *Hill v. State*, 746 P.2d 678, 680 (Okla.Crim. App.1987). These comments were not improper as they merely made reference to evidence presented at trial. *Dyle v. State*, 664 P.2d 1047, 1049 (Okla.Crim.App.1983), *cert. denied*, 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 159 (198–).

Finally, appellant argues that he was denied effective assistance of counsel. Specifically, he claims trial counsel's failure to object to the evidence discussed above "undermined the proper functioning of the adversarial process so that the trial cannot be relied upon as having produced a just result." *Strictland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Strickland* set forth a two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient, and second, he must show the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. Unless the defendant makes both showings, "it cannot be said that the conviction ...

resulted from a breakdown in the adversary process that renders the result unreliable."

Appellant argues that the evidence discussed above would not have been admitted if defense counsel had objected. However, we have determined that all the evidence was correctly admitted except for the testimony of the rebuttal witness. Assuming arguendo this was deficient performance, we cannot say this evidence prejudiced the defense. *Rogers v. State,* 721 P.2d 805, 810 (Okla.Crim.App.1986). This assignment is without merit.

For the reasons discussed above, the judgment and sentence is AFFIRMED.

LANE, V.P.J., and LUMPKIN, J., concur.

BRETT, J., concurs in result.