**Gary Wayne BURKE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–87–975.**

Court of Criminal Appeals of Oklahoma.

Nov. 1, 1991.

Rehearing Denied Dec. 9, 1991.

Jamie D. Pybas, Asst. Appellate Public Defender, Norman, for appellant.

---

**9.** For the pertinent terms of Art. 7 § 4, Okl. Const., see *supra* note 2.

**10.** See the authorities cited *supra* note 3.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

GARY WAYNE BURKE, appellant, was tried by jury for the crime of First Degree Rape in violation of 21 O.S.Supp.1984, §§ 1111 and 1114, in Case No. CRF–87–548 in the District Court of Oklahoma County. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at thirteen (13) years imprisonment. The trial court sentenced appellant in accordance with the jury's verdict. From this Judgment and Sentence, appellant appeals.

At trial, Susan Little testified that around the end of January 1987, she was required to enter the hospital for three days. While she was in the hospital, she had her sister watch her three children, R.P., age thirteen, C.L., age nine, and D.L., age seven. Appellant was Susan's sister's boyfriend. Susan testified that after she was released from the hospital she picked up the children and returned home. While they were at home, Susan noticed D.L. acting unusual. The next day, while giving D.L. a bath, Susan noticed that D.L. was holding her private area and saying that it hurt, burned and itched. D.L. then told her mother that appellant had hurt her. As Susan inspected, she noticed that D.L.'s vagina looked irritated and "was open more than what it should be." Susan further testified that her son, C.L., told her that he woke up one night while at his aunt's house and observed appellant on top of D.L.

D.L. then testified. On the witness stand, D.L. reluctantly described the incident and identified appellant as the perpetrator. D.L. also utilized anatomically correct dolls to explain what had happened to her. D.L. was cross-examined.

The State next presented C.L. C.L. testified as to waking up one night while at his aunt's house and seeing appellant on top of D.L., "humping her."

The State's next witness was Andrea Key, a physician at Children's Hospital in Oklahoma City. Ms. Key testified that she came into contact with D.L. and her mother when they came to the hospital. Ms. Key explained that she performed a physical examination on D.L. Ms. Key then testified as to what both D.L. and her mother told her concerning the incident. Ms. Key related that when D.L. was utilizing anatomically correct dolls to show what had happened to her, she "opened the dolls' pants, took the male doll's penis and placed it into the female doll's vagina." Ms. Key stated that D.L. identified appellant as the perpetrator.

The State's final witness was Timothy Brown, an Oklahoma City police officer. Officer Brown testified that on January 29, 1987, he responded to a call and came into contact with Susan Little. Officer Brown then related his conversation with Susan Little concerning the incident. Officer Brown also testified concerning what D.L. told him about the incident. Officer Brown stated that D.L. told him, ". . . Uncle Gary climbed on top of [me] and started humping on [me] . . . and . . . stuck his babbo inside of [me]."

After Mr. Brown's testimony, the jury was allowed to view a videotape filmed prior to trial, of D.L. describing the same incident to Oklahoma City Police Detective Daniel Garcia. D.L. also used anatomically correct dolls during the interview. The videotape also included another interview conducted by Detective Garcia of C.L. While the record does not indicate whether the trial court determined that the time and content and circumstances of the statement were sufficiently reliable (22 O.S.Supp. 1986, § 752 B(1)), appellant did not object to the playing of the video, and in fact, stipulated that all requirements of 22 O.S.Supp.1986, § 752, had been met. After the tape had been played for the jury, the State rested.

During the defense, appellant testified that he never raped or touched D.L.

On appeal, appellant contends that 22 O.S.Supp.1986, § 752, is unconstitutional because it violates a defendant's Sixth

Amendment right to face-to-face confrontation. Since appellant did not object to the statutory procedure at trial, we will only review for fundamental error.

The challenged statute, entitled "Admissibility of recorded statement of child 12 years of age or younger," provides as follows:

A. This section shall apply only to a proceeding in the prosecution of an offense alleged to have been committed against a child twelve (12) years of age or younger, and shall apply only to the statement of that child or other witness.

B. The recording of an oral statement of the child made before the proceedings begin is admissible into evidence if:

1. The court determines that the time, content and circumstances of the statement provide sufficient indicia of reliability;

2. No attorney for any party is present when the statement is made;

3. The recording is both visual and aural and is recorded on film or videotape or by other electronic means;

4. The recording equipment is capable of making an accurate recording, the operator of the equipment is competent and the recording is accurate and has not been altered;

5. The statement is not made in response to questioning calculated to lead the child to make a particular statement or is clearly shown to be the child's statement and not made solely as a result of a leading or suggestive question;

6. Every voice on the recording is identified;

7. The person conducting the interview of the child in the recording is present at the proceeding and is available to testify or be cross-examined by any party;

8. Each party to the proceeding is afforded an opportunity to view the recording at least ten (10) days before trial, unless such time is shortened by leave of the court for good cause shown; and

9. The child either:

a. testifies at the proceedings, or

b. is unavailable as defined in Title 22 as a witness.

When the child is unavailable as defined in Title 22 as a witness, such recording may be admitted only if there is corroborative evidence of the act.

Initially, we note that the issue before us concerns only the admissibility of a recorded videotaped statement of a child taken before trial. We also find that a review of cases from other jurisdictions will highlight the constitutional deficiencies we find in 22 O.S.Supp.1986, § 752.

## I.

### A.

In *State v. Johnson*, 240 Kan. 326, 729 P.2d 1169 (1986), the State of Kansas presented the videotaped testimony of a sexually abused child pursuant to K.S.A.1985 Supp. 22–3433, a statute concerning the admission of a prior videotaped statement made by a child alleged to be the victim of a crime. Included among various requirements for the admissibility of the recording, the Kansas statute requires that the child be available to testify and that if a recording is admitted in evidence under the statute, any party to the proceeding may call the child to testify and be cross-examined. K.S.A.1985 Supp. 22–3433(9)(b).

Beginning its review of the statute, the Kansas Supreme Court found that videotaped testimony constituted hearsay. *Johnson*, 729 P.2d at 1173. We likewise find that the videotaped testimony taken pursuant to 22 O.S.Supp.1986, § 752, is *manufactured* hearsay, as it is an out-of-court statement offered to prove the truth of the matter asserted. *See* 12 O.S.1981, § 2801(3). The Kansas Supreme Court then noted that admitting a declarant's out-of-court statements in situations where the declarant is available to testify does not violate the confrontation clause. The Kansas Supreme Court found it critical that the statute provided for the admission of the videotaped testimony only where the child was available to testify and be cross-examined either in court or pursuant to another statutory procedure and the trial court determined that the time, content and circumstances of the statement provided suffi-

cient indicia of reliability. *Johnson,* 729 P.2d at 1174. Thus, the Kansas Supreme Court found their statute to be constitutional.

## B.

In *Long v. State,* 742 S.W.2d 302 (Tex. Cr.App.1987), a videotaped interview of a sexually abused child, conducted by the assistant director of the Dallas Rape Crisis Center, was admitted into evidence during the State's case-in-chief. The child did not testify during the case-in-chief; however, she was called during rebuttal and proceeded to relate essentially the same facts that had been recorded on the videotape and previously played to the jury. The Texas Court of Criminal Appeals found that the Texas statute authorized a significant departure from established trial procedure by dispensing with the requirement that the prosecution develop its case-in-chief in the courtroom, in the presence of the judge, jury, and the defendant. *Long,* 742 S.W.2d at 314.

The court also found the elimination of any opportunity for contemporaneous cross-examination of the witness to be a fatal constitutional problem. *Long,* 742 S.W.2d at 319. The court further held that noncontemporaneous cross-examination does not properly preserve the right of confrontation, as such a time delay largely eliminates the benefit of the right. The court found that the denial of contemporaneous cross-examination tainted the reliability of the truth finding process and gave the State an unfair advantage. *Id.* The court also found that since the child's testimony during rebuttal was simply repetitious of her videotaped statement, it was improper bolstering of an unimpeached witness. *Long,* 742 S.W.2d at 322. Finally, in a concurring opinion, Judge Teague found that the videotaped interview violated the due process clause of the Fourteenth Amendment of the United States Constitution, because the trial court did not have an opportunity to determine the competency of the child prior to the testimony and because the testimony was not under oath. *Id.* at 328. In fact, as Judge Teague observed, the trial court may not even be implicated in the tape recorded interview session. *Id.*

## C.

Since *Long,* the Texas Court of Criminal Appeals held in *Briggs v. State,* 789 S.W.2d 918 (Tex.Cr.App.1990), that Article 38.071, § 2, can be applied in a constitutional manner, and to the extent *Long* held the provision unconstitutional on its face, it was overruled. The court in *Briggs* found that since a statutory requirement for the admissibility of a videotape of a child victim is that the child be available to testify, it is not violative of the confrontation clause on its face. The court acknowledged that application of the statute may well deprive an accused of his confrontation right if a videotape is admitted, though full and effective cross-examination of the child should prove unattainable at trial. *Briggs,* 789 S.W.2d at 922.

Finally, the court acknowledged that while the statute may allow the State to essentially present its principal witness twice, the statute will not invariably operate to allow the State to bolster its version of the facts. *Id.* The court found that the State could choose to call the child during its case-in-chief, ask a few preliminary questions with regard to making of the videotape, and then tender the witness to the defendant for cross-examination. The court found that under that scenario, the State would neither duplicate its case nor force the defendant to endure the stigma of calling the child to the stand himself. *Id.*

## II.

■ After a review of the cases above, we find one of the fatal flaws of 22 O.S.Supp.1986, § 752, to be that if the child is declared unavailable, the defendant will be forever denied any opportunity for cross-examination. For example, Section 752 differs from the Kansas statute reviewed in *Johnson* in that it does not require the child to be available to testify and be subject to cross-examination before the tape can be admitted.

We also share the concerns of the Texas Court of Criminal Appeals expressed in *Long* and *Briggs* about the lack of contemporaneous cross-examination with such videotaped statements. Even when the effect of confrontation on a child can be accurately predicted to the extent the child could be classed as unavailable, it is still necessary that the recorded testimony carry the necessary indicia of reliability. And, we believe this can only be achieved by giving the accused opportunity for cross-examination.

We are further troubled by the fact that in some cases, the State, through the use of the videotape, would be able to essentially present its principal witness twice. Such happened in the case at bar. While D.L. did testify and was cross-examined, her testimony was never impeached. We find that this scenario produced an improper bolstering of the State's case and was error. *See Long v. State*, 742 S.W.2d 302, 322 (Tex.Cr.App.1987).

This Court also expresses concern about the possibility of the State, under 22 O.S.Supp.1986, § 752, of having only to present its most damaging witness to the jury through a hearsay statement. We find it fairly obvious that the prosecution would have a far easier time of presenting the testimony of a child of tender years under a setting similar as we had in this case with Detective Garcia. It would be far easier to elicit favorable testimony from a child with only a detective, social worker or other type of skilled questioner propounding questions without any confrontation or cross-examination. We must protect the rights of a defendant to have the ability of complete and full cross-examination and to ensure that the jury has the ability to observe the responses and the demeanor of a witness. We should not allow the State to present a tape made with one-sided questions, by an expert questioner, who could coach, lead and gain the required result without the defendant having his Sixth Amendment right of confrontation.

Justice Sandra Day O'Connor, in a recent U.S. Supreme Court case, indicated that the central concern of the confrontation clause of the U.S. Constitution is to ensure the reliability of the evidence presented against a defendant by subjecting such evidence to the most rigorous testing in the context of an adversary proceeding before a trier of fact. Justice O'Connor stated that such testing includes not only a personal examination, but also, a witness giving his statements under oath, the witness being subject to cross-examination, and permitting the jury to observe the demeanor of the witness in making the statements, thus aiding the jury in assessing credibility. *See Maryland v. Craig*, 497 U.S. ——, ——, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666, 678 (1990).

Title 22 O.S.Supp.1988, § 752, does not meet the test of *Craig*. The statute fails to require (1) oath, (2) the witness to be subject to cross-examination and (3) the right of the jury to observe the witness to determine the demeanor and credibility of same. The statute, on its face, is unconstitutional.

For the foregoing reasons, this case is REVERSED and REMANDED for a new trial.

LANE, Presiding Judge, dissenting:

The majority, without analysis of the scope or limitation of the Confrontation Clause of either the Oklahoma or federal constitution, declares 22 O.S.1981, § 752 unconstitutional for it deprives the defendant of the opportunity for cross-examination. Cross-examination, the majority tells us, is the only way to ensure testimony has necessary indicia of reliability. In this case the videotaped statement is not testimony and in the context of this case the majority's bold declaration is plainly contra state and federal jurisprudence. *See Jones v. State*, 781 P.2d 326 (Okl.Cr.1989); *Matter of W.D.*, 709 P.2d 1037 (Okl.1985); *Maryland v. Craig*, 497 U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). If we were to adopt this position, all of the hearsay provisions of the Oklahoma Evidence Code would become unconstitutional as well. This result is not required by the Confron-

tation Clause, and indeed this case does not invoke the Confrontation Clause.

The complaining witness, D.L., testified and was fully cross-examined. Subsequently, and by stipulation of the parties to the indicia of reliability set forth in Section 752, a video-taped interview conducted by the investigating police officer was admitted into evidence. The appellant was not denied his right of cross-examination of the witness, and he waived any objection to introduction of the video tape. The majority's concerns about cross-examination are all hypothetical and certainly not presented here. However, if we are to abandon appellate restraint and address this issue, I would find Section 752 is not unconstitutional on its face, but is subject to limitations of the Oklahoma Evidence Code as well as case law regarding the admission of evidence.

Section 752 may perhaps be most effectively examined in light of 12 O.S.Supp. 1990, § 2803.1. Section 2803.1 provides for the admission of a statement made by a child twelve (12) years of age or younger which describes any act of sexual abuse against the child. Before allowing the statement into evidence the trial court must first determine outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability. In order for the statement to be admissible the child must testify, or if is the child is unavailable as defined in Title 12, there must be corroborative evidence of the act. A witness is unavailable if he is exempt on the ground of privilege, persists in refusing to testify, testifies to a lack of memory, has died or is physically or mentally infirm, or if his attendance cannot be procured. The unavailability must not be due to an act of the proponent of the statement for the purpose of preventing the witness from attending or testifying. 12 O.S.1981, § 2804.

Section 2803.1 has withstood the very constitutional challenge now aimed at Section 752. This Court has determined Section 2803.1 does not violate a criminal defendant's right to confrontation, for the trustworthiness of the statement is protect-ed by the reliability hearing and the requirement that the child testify or be declared unavailable. *Jones v. State*, 781 P.2d 326 (Okl.Cr.1989). The Oklahoma Supreme Court likewise found Section 2803.1 constitutional for the same reasons. *Matter of W.D.*, 709 P.2d 1037 (Okl.1985). These cases recognize correctly that the right to confrontation is not absolute. *See also Maryland v. Craig*, supra; *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

Section 752 is very similar to Section 2803.1. It provides a recorded statement is admissible if the court determines the time, content and circumstances of the statement provide sufficient indicia of reliability, and the child testifies, or if the child is unavailable there is also corroborative evidence. 22 O.S.Supp.1986, § 752. Section 752 goes beyond Section 2803.1 in that it sets forth six indicia of reliability which must be followed for the recording to be admissible, many of which go to the reliability of the recording process itself. Since Section 2803.1 does not of itself contemplate the statement used to be in the form of an electronic recording, these provisions were incorporated to guarantee the reliability of the recording process itself.

I find no reason whatsoever to make a constitutional distinction between the admissibility of statements relayed by a witness as allowed by Section 2803.1 and those same statements recorded by video tape. Certainly video is a powerful medium which can both create and solve certain evils. On one hand it presents the very real danger evidence will be manipulated and manufactured to disguise the truth. On the other hand, it gives the jury the opportunity to see the declarant and judge first hand the declarant's credibility.

Like any evidence, admission of a recorded statement under Section 752 would be subject to other limitations of the Evidence Code. The mere fact it satisfies the requirements of Section 752 does not guarantee admission. It must be relevant, and it

must not be cumulative or offered for an improper purpose.

In the present case the appellant has waived all but fundamental error by failing to lodge a contemporaneous objection, and in fact stipulating to the admissibility of the videotape under Section 752. Reviewing for fundamental error only, I would find the admission of the videotaped interview was not reversible error. The tape, by stipulation and in fact, satisfies the threshold of admissibility by conforming to the indicia of reliability required by Section 752. While the videotape is largely cumulative of D.L.'s testimony, its admission into evidence was, at most, harmless error. I would affirm the judgment and sentence.

LUMPKIN, Vice Presiding Judge, specially concurs:

I concur in the results reached by the Court in this case, however, I do not agree with the legal analysis supporting the decision.

While I agree that the decision in *Maryland v. Craig*, 497 U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), provides insight into the legal questions presented, the issue in this case is substantially different. Three Oklahoma statutes are at issue in this case: 22 O.S.Supp.1984, § 753; 22 O.S.Supp.1986, § 752; and 12 O.S.Supp. 1986, § 2803.1.

This Court has recently interpreted 22 O.S.Supp.1984, § 753, in conjunction with the criteria set forth in *Maryland v. Craig* and determined that Section 753 is constitutional on its face. *Shipman v. State*, 816 P.2d 571, 574 (Okl.Cr.1991). At the same time, we "adopt[ed] the procedural requirements set forth in *Craig* and *Coy* to ensure that the provisions of section 753 are applied in a consistent constitutional manner". *Id.*

The issue in this case requires the Court to review 22 O.S.Supp.1986, § 752 and 12 O.S.Supp.1986, § 2803.1. Section 2803.1 is the enactment of a specialized hearsay exception within the Oklahoma Evidence Code. Section 752, in effect, enacts a procedure for manufacturing hearsay testimony without the right of confrontation which was afforded in Section 753. If Section 752 could withstand constitutional scrutiny it would potentially subvert the protections provided in Section 753 as applied in *Shipman*. It would in effect be an ex parte deposition which could deny persons charged with a crime the right of confrontation of their accusers.

I use the term "manufactured hearsay" because the procedure set forth in Section 752 is totally foreign to the historical foundations of recognized exceptions to the hearsay rule. Therefore, we must review the underlying basis for allowing the admissibility of what is otherwise hearsay evidence and whether or not it violates the Confrontation Clause of the Federal or Oklahoma Constitutions.

The dispositive U.S. Supreme Court analysis on this issue is *Idaho v. Wright*, 497 U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). At issue was whether a child victim's statement admitted under Idaho's residual hearsay exemption violated a defendant's Confrontation Clause rights.[1] In finding that the defendant's rights had been violated, the Court analyzed the factors to be considered in determining whether the admissibility of hearsay evidence will violate the Confrontation Clause. Citing to *Maryland v. Craig* the Court recognized that "the [Confrontation] Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial". 110 S.Ct. at 3146. However, these exceptions are limited. Both *Maryland v. Craig* and *Idaho v. Wright* cite to the U.S. Supreme Court's early discussion of the perimeters of the right of confrontation in *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1894). In *Mattox* the Court stated:

The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in

---

1. The Idaho statute is substantially the same as 12 O.S.1981, 2803(24).

lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. There is doubtless reason for saying that the accused should never lose the benefit of any of these safeguards even by the death of the witness; and that, if notes of his testimony are permitted to be read, he is deprived of the advantage of that personal presence of the witness before the jury which the law has designed for his protection. But general rules of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. To say that a criminal, after having once been convicted by the testimony of a certain witness, should go scot free simply because death has closed the mouth of that witness, would be carrying his constitutional protection to an unwarrantable extent. The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused. *Id.* at 242–243, 15 S.Ct. at 339–340.

The Court in *Mattox* recognized that the right of confrontation under the Federal Constitution is not absolute. Subsequently, *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923, 926 (1965) held that the "Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment". The Court determined in that case that it was error to utilize a transcript of a witnesses testimony from a hearing where the defendant was not represented by an attorney and afforded a complete and adequate opportunity to cross-examine; however, it again recog-

nized there were exceptions to the right of confrontation.

This analysis was continued in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Once again the issue was admissibility of the preliminary hearing testimony of one of the State's witnesses pursuant to a revised section of the California Evidence Code which adopted a minority view regarding the admissibility of hearsay statements. The U.S. Supreme Court stated:

The issue before us is the considerable narrower one of whether a defendant's constitutional right "to be confronted with the witnesses against him" is necessarily inconsistent with a State's decision to change its hearsay rules to reflect the minority view described above. While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. (Cites omitted) The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.

Given the similarity of the values protected, however, the modification of a State's hearsay rules to create new exceptions for the admission of evidence against a defendant, will often raise questions of compatibility with the defendant's constitutional right to confrontation. Such questions require attention to the reasons for, and the basic scope of, the protections offered by the Confrontation Clause. *Id.* 399 at U.S. 155–156, 90 S.Ct. at 1933–1934.

The Court went on to recognize "that the particular vice that gave impetus to the confrontation claim was the practice of trying defendants on 'evidence' which consisted solely of ex parte affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact". Id. at 156, 90 S.Ct. at 1934. It was determined that the revised statute was not invalid on its face and the Sixth Amendment did not bar the admission of the preliminary hearing testimony. However, the case was remanded to the State court for review of questions not previously addressed.

An in-depth analysis regarding the admissibility of hearsay evidence and a defendant's right under the Confrontation Clause was rendered in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). "This Court, in a series of cases, has sought to accommodate these competing interests [public policy v. right of confrontation]. True to the common-law tradition, the process has been gradual, building on past decisions, drawing on new experience, and responding to changing conditions. The Court has not sought to 'map out a theory of the Confrontation Clause that would determine the validity of all ... hearsay "exceptions".' *California v. Green,* 399 U.S. at 162, 90 S.Ct. at 1937, 26 L.Ed.2d 489. But a general approach to the problem is discernible." 448 U.S. at 64–65, 100 S.Ct. at 2538–2539.

Our analysis of Section 752 must include the criteria established in *Ohio v. Roberts,* (adopted by this Court in *De Vooght v. State,* 722 P.2d 705 (Okl.Cr.1986); *Newbury v. State,* 695 P.2d 531 (Okl.Cr.1985)) and applied in *Idaho v. Wright:*

The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. (Cites omitted)

The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule". (Cites omitted) 448 U.S. at 65, 100 S.Ct. at 2538–2539.

The U.S. Supreme Court enunciated in *Mattox* the "primary object of the [Confrontation Clause] was to prevent depositions or ex parte affidavits" from being used against a person charged with a crime. Section 752, in effect, creates a procedure to take a "deposition or ex parte affidavit" to be used against the accused. This procedure runs contra to the basic foundations of the Confrontation Clause as discussed in *Mattox.* The type of statement sought to be taken, while it is hearsay, is not the type of hearsay which can qualify as an exception to the right of confrontation when analyzed in the light of the historical foundation established for the exemption of certain types of hearsay. Therefore, section 752 violates the Confrontation Clause of the Sixth Amendment to the U.S. Constitution on its face when reviewed in accordance with the criteria set forth in *Mattox v. United States, Ohio v. Roberts,* and *Idaho v. Wright.*

The Oklahoma Legislature has created a separate exception to the Hearsay Rule for statements of children 12 years or younger describing acts of physical abuse or sexual contact. *See* 12 O.S.Supp.1990, § 2803.1. Section 2803.1 was enacted in 1984 specifically to admit extrajudicial statements by children as an exception to the hearsay rule. *See In the Matter of W.D.,* 709 P.2d 1037, 1041 (Okl.1985); 1 Okla.Evid. (Whinery) Supp.1991, 168. The U.S. Supreme Court in *California v. Green* determined that a legislative adoption of a minority view exception to the Hearsay Rule did not violate Sixth Amendment rights on its face.

Each of these legislated exceptions deal with statements which comport with the traditional view of admissible hearsay, i.e. statements made in the normal course of events and not a part of a procedure to preserve the statement for use at trial. Section 2803.1 affords an opportunity for admission of true hearsay statements by children 12 years or younger. In addition, 22 O.S.Supp.1984, § 753, applied in accordance with our decision in *Shipman*, affords an opportunity to protect a child witness from the trauma of facing a defendant at trial. We have already determined in *Shipman* that Section 753 is valid on its fact. Section 2803.1 is also facially valid.