842 P.2d 742

**In the Matter of TROY P., a child, Respondent–Appellant.**

**No. 13361.**

Court of Appeals of New Mexico.

Oct. 27, 1992.

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Appellate Defender, Amme M. Hogan, Asst. Appellate Defender, Santa Fe, for respondent-appellant.

## OPINION

BLACK, Judge.

Respondent appeals from an adjudication of delinquency based on a determination by a jury that he committed the act of criminal sexual contact of a minor. On appeal, he argues that the trial court erred in allowing the introduction into evidence of a hearsay statement by the alleged victim, a four-year-old girl, to her mother and a videotape of an interview between the alleged victim and a social worker. Respondent contends that the statement to the mother and the videotape were inadmissible hearsay and that their use at trial violated the right to confront his accusers, guaranteed to him by the Sixth Amendment to the United States Constitution.

We hold that the admission of the videotape violated the requirements of the Confrontation Clause. U.S. Const. amend. VI. Accordingly, we reverse the determination of delinquency and remand this case for a new trial.

FACTS.

During the relevant time, the parents of the little girl were separated and child custody was a subject of contention. Her father had custody of the little girl and her siblings during the week; her mother had custody on the weekend. During the period they lived with their father, the younger children went to a babysitter's apartment during the work day.

At the conclusion of a weekend in February of 1991, the little girl told her mother

that she didn't want to go back with her father, and started to cry. After questioning, she said someone had "touched" her. Her mother did not believe her and proceeded with the usual custody arrangement. On March 3, 1991, the mother informed the child she was returning to her father, and the child began screaming and crying. After being soothed the little girl repeated the allegation she was "touched," and eventually identified her babysitter's son, Respondent, as the perpetrator. On this occasion her mother called the police. Following advice from the police, Mother took the four-year-old girl to a doctor, who examined her. The girl again identified the perpetrator as Respondent.

On March 8, 1991, a delinquency petition was filed against Respondent. On March 11, at the request of a juvenile probation officer, a social worker conducted what the parties have labelled a "courtesy interview," apparently a common practice in this type of situation. The social worker recorded this "interview" on videotape. Under persistent questioning by the social worker, the little girl described the incident, somewhat inconsistently, and identified the perpetrator as Respondent.

In May 1991, the children's court attorney served notice on Respondent that he intended to use hearsay at the trial, specifically the testimony of the little girl's mother and the social worker concerning the statements that the little girl made to them. The notice specifically referred to the State's intent to introduce in evidence the videotape of the social worker's interview with the alleged victim. A few days later, Respondent filed a motion in limine challenging the use at trial of the hearsay evidence referred to in the State's notice.

The trial court held an evidentiary hearing on the motion. During the hearing, the little girl was called briefly to the stand, but refused to communicate with the prosecuting attorney. At this hearing, the trial judge asked the prosecutor why he had failed to proceed under SCRA 1986, 10–217, which sets forth the procedure by which a videotaped deposition may be taken in this situation. The prosecutor responded that

he had tried to question the little girl earlier, but she would not communicate with him, and that he believed the same thing would occur in a deposition with both counsel attempting to question the little girl. In addition, the trial court heard testimony from the little girl's mother, the doctor, and the social worker. The following day, the trial court filed a written order denying the motion in limine and ruling that the statements and videotape were admissible. The written order set out the circumstances on which the trial court based its ruling, without differentiating between statements made to the mother, the doctor, and the social worker.

At trial, the State presented two witnesses: the little girl's mother and the social worker. In addition, the trial court allowed the State to play the videotape of the interview between the social worker and the little girl for the jury. At the conclusion of the videotape, the little girl was held up and the social worker merely identified her before she was whisked out of the courtroom without any chance for cross-examination.

Respondent presented the babysitter, who testified that the little girl had returned from her mother's in November with medicine for a urinary infection. When the babysitter asked about it, the little girl told her she had "private pains" because the mother's boyfriend had touched her. The little girl's father also testified that the little girl had told him her mother's boyfriend had touched her. In addition, Respondent presented a witness who testified that during the period of time in question, Respondent had been working during most of the hours that he could have had contact with the little girl.

The jury determined that Respondent had committed the act in question, and Respondent was adjudicated delinquent.

## I. ADMISSION OF THE VIDEOTAPE VIOLATED RESPONDENT'S RIGHT OF CONFRONTATION.

 Respondent argues his constitutional right to confront the witnesses against him was violated by the admission of the

social worker's videotaped interrogation of the little girl. We agree.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." This requirement is made applicable to the states through the Fourteenth Amendment to the United States Constitution. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *State v. Garcia*, 95 N.M. 246, 620 P.2d 1271 (1980).

In sixteenth century England, magistrates interrogated witnesses before the trial, and at the trial proof was usually given by reading statements, affidavits, and letters from absent witnesses and accomplices. *White v. Illinois*, 502 U.S. ——, ——, 112 S.Ct. 736, 745, 116 L.Ed.2d 848, 862–63 (1992) (Thomas, J., concurring in part). The Sixth Amendment right to confront one's accusers was designed to prevent such practices. *Id.; Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895); *Burke v. State*, 820 P.2d 1344, 1352 (Okla.Crim.App.1991) (Lumpkin, J., specially concurring). The courtesy interview here resembles those methods of ex parte presentation of a witness's allegations.

■ The trial court apparently admitted the video testimony in this case on the basis of the "residual exception" to the hearsay rule. *See* SCRA 1986, 11–804(B)(6). The residual exception is not a well-established exception to the hearsay rule and the Confrontation Clause therefore requires it be analyzed very stringently before admitting out-of-court statements in criminal cases. *State v. Barela*, 97 N.M. 723, 643 P.2d 287 (Ct.App.1982).

In overruling Respondent's objections in this case, the trial court relied on *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). *Wright* involved the admission of hearsay statements made by a two-and-one-half-year-old girl to a physician investigating child sexual abuse. The Supreme Court specifically held such hearsay should not have been admitted, despite Idaho's residual hearsay exception which, like New Mexico's, was copied from Federal Rule of Evidence 803(24).

The *Wright* majority specifically addressed the dangers of reliance upon the residual exception to the hearsay rule in criminal cases. Since statements under the residual hearsay clause "do not share the same tradition of reliability that supports the admissibility of statements under a firmly rooted hearsay exception," such statements are " 'presumptively unreliable and inadmissible for Confrontation Clause purposes.' " *Wright*, 497 U.S. at 818, 110 S.Ct. at 3148, 111 L.Ed.2d at 653–54 (quoting *Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986)). "Thus, unless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement." *Wright*, 497 U.S. at 821, 110 S.Ct. at 3150, 111 L.Ed.2d at 656.

In the present case we believe the totality of circumstances provides even less of a showing of " 'particularized guarantees of trustworthiness' " than in *Wright*. *Id.* at 815, 110 S.Ct. at 3146, 111 L.Ed.2d at 652 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)). In reviewing the videotape, it is clear that the social worker, like the doctor in *Wright*, was well aware of the allegations against Respondent, and she referred to her notes on several occasions when the little girl was unresponsive or "inappropriate" in her responses. Numerous legal commentators have pointed out the danger of suggestive interviewing procedures in child sexual abuse cases. *See, e.g.,* John R. Christiansen, *The Testimony of Child Witnesses: Fact, Fantasy, and the Influence of Pretrial Interviews*, 62 Wash.L.Rev. 705 (1987); Thomas L. Feher, *The Alleged Molestation Victim, the Rules of Evidence, and the Constitution: Should Children Really Be Seen and Not Heard?*, 14 Am. J.Crim.L. 227, 230–33 (1988); Paul R. Lees–Haley, *Innocent Lies, Tragic Consequences: The Manipulation of Child Tes-*

*timony,* 24 Trial, April 1988, at 37; Raymond K. Ramella, Casenote, *The Confrontation Clause and Hearsay in Child Abuse Cases: United States v. Spotted War Bonnet,* 25 Creighton L.Rev. 1043 (1992). The courts have also been especially zealous in guarding the right to confront a child making allegations of sexual abuse where a party seeks to introduce a statement consisting of "favorable testimony from a child with only a detective, social worker or other type of skilled questioner propounding questions." *Burke,* 820 P.2d at 1348; *accord State v. R.C.,* 494 So.2d 1350 (La.Ct.App.1986); *see also Maryland v. Craig,* 497 U.S. 836, 867, 110 S.Ct. 3157, 3175, 111 L.Ed.2d 666, 693 (1990) (Scalia, J., dissenting). In the present case the defense was never given the opportunity to cross-examine the little girl, either outside or in the presence of the jury.

In light of the origins of the Confrontation Clause, "[t]he right to cross-examination is the most important element, and the element least tolerant of infringement." John E.B. Myers, *Child Witness Law and Practice* § 6.4, at 401–02 (1987). We conclude that admission of the videotaped interview was a violation of Respondent's right to confrontation and therefore the adjudication of delinquency must be reversed.

## II. THE MOTHER'S TESTIMONY

Since it may again arise at the retrial of this matter, we consider the mother's testimony. At trial the victim's mother was allowed to give the following testimony regarding what the victim related to her on March 3:

> And we got in the car. I got the kids. We left and got on the road. She asked me where we were going. I said, "You have to go, you have to go home, get you ready to go back with your dad." And all of a sudden she started screaming, crying, she didn't want to go back. She just cried all the way back to, all the way back to [our] apartment. And I took her to my room, just me and her, and I asked her why. She said, "That boy touches me, Mom." And I said, "Which boy?" And she kept saying, "That boy." And I asked her again, "What boy?" And she

said, "Pauline's son." And I said, "Which Pauline's son? Which Pauline's son?" And she said, "Troy." And she kept saying, "Troy." She starts crying, she stops, and I keep asking her, and I asked her if she was lying, and she said, "I'm not lying, Mom." And I just went and called the City Police.

Respondent objected on grounds that the mother's testimony was impermissible hearsay and violated his constitutional right to confront his accuser.

### A. Hearsay: The Excited Utterance Exception.

The New Mexico Rules of Evidence generally preclude the introduction of hearsay. SCRA 1986, 11–802. The same rules, however, recognize several specific exceptions to this exclusionary rule. SCRA 1986, 11–803(B), makes such an exception for an excited utterance "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The assumption underlying the excited utterance exception is that the utterance is " 'precipitated by an external startling event [and] will be bereft of the reflective capacity essential for fabrication.' " *State v. Maestas,* 92 N.M. 135, 141, 584 P.2d 182, 188 (Ct.App. 1978) (quoting 4 *Weinstein's Evidence* 803–80 (1977)).

Although it is difficult to determine the exact date of the alleged touching, it is clear that it preceded the March 3 declaration by several weeks. However, this in itself does not conclusively preclude the near-hysterical recitation on March 3 from being within the excited utterance exception. Although time definitely is a factor to be considered, admissibility depends more on circumstances than on time, and each case must depend on its own circumstances. *State v. Robinson,* 94 N.M. 693, 697–98, 616 P.2d 406, 410–11 (1980). "Events may so deeply traumatize a person that long after stress has subsided a chance reminder may have enormous psychological impact, causing renewed stress and excitement and educing utterances relating to the original trauma." David W. Louisell & Christopher B. Muel-

ler, 4 *Federal Evidence* § 439, at 507 (1980); *see also* Myers, *supra*, § 5.33, at 336–37 (presentation of stimulus connected with the original event rekindles excitement). Courts have, therefore, admitted spontaneous utterances made well after the event when the declarant was suddenly subjected to rekindled excitement. *United States v. Scarpa*, 913 F.2d 993, 1016–17 (2d Cir.1990); *United States v. Napier*, 518 F.2d 316 (9th Cir.), *cert. denied*, 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975).

In situations such as that at bar, many courts have also considered the likelihood that children react to and relate traumatic events somewhat differently than adults. *See, e.g., Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057–58 (6th Cir.1983), *cert. denied*, 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984); *United States v. Iron Shell*, 633 F.2d 77, 85–86 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). More than one court has cited this factor in upholding the admissibility of children's excited utterances naming the defendant when made immediately upon awaking in the middle of the night. *See, e.g., George v. State*, 306 Ark. 360, 813 S.W.2d 792, 795–96, *modified*, 306 Ark. 360, 818 S.W.2d 951 (1991); *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220, 1231 (1989). Indeed, this Court upheld the admissibility of such a statement under the *res gestae* doctrine prior to New Mexico's adoption of the Rules of Evidence. *State v. Apodaca*, 80 N.M. 244, 453 P.2d 764 (Ct.App.1969).

■ While the present circumstance presents a closer question, we believe the imminent return of the victim to her father could support admission of her statements as an excited utterance. *See Morgan v. Foretich*, 846 F.2d 941 (4th Cir.1988). The trial court in the present case did not explicitly analyze the type of factors set forth by the fourth circuit in *Morgan*, and there are several significant differences between this case and *Morgan*, e.g., time lapse, age of the child, lack of clear physical evidence. Nonetheless, the determination of the admissibility of a statement as an excited utterance is a matter within the sound discretion of the trial court, *State v. Martinez*, 99 N.M. 48, 51, 653 P.2d 879, 882 (Ct.App.), *cert. denied*, 99 N.M. 47, 653 P.2d 878 (1982), and we think the trial court on the present record could find significant differences between this case and *State v. Taylor*, 103 N.M. 189, 704 P.2d 443 (Ct. App.1985).

### B. *Excited Utterance Under the Confrontation Clause.*

Respondent argues that since the child victim was not available for cross-examination, admission of the mother's hearsay testimony violates his right of confrontation.

■ As we have noted, the Confrontation Clause bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970); *State v. Austin*, 104 N.M. 573, 725 P.2d 252 (Ct.App.1985). Hearsay statements which carry sufficient indicia of reliability, however, also satisfy the Confrontation Clause. *Bourjaily v. United States*, 483 U.S. 171, 182–84, 107 S.Ct. 2775, 2781–83, 97 L.Ed.2d 144 (1987); *see also Martinez*, 99 N.M. at 52, 653 P.2d at 883. "Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements." *Wright*, 497 U.S. at 817, 110 S.Ct. at 3147, 111 L.Ed.2d at 653. The excited utterance exception to the hearsay rule is sufficiently well established that a determination that the exception applies obviates the need for a separate assessment of reliability under the Confrontation Clause. *White v. Illinois*, 502 U.S. ——, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).

### CONCLUSION.

The admission of the social worker's videotaped interview of the child violated Respondent's right to confront and cross-examine his accusers and requires a new trial. The mother's testimony relating the

child's statements may well be admissible under Rule 11–803(B) and we assume the trial court will apply the proper legal analysis in considering this issue if it should arise at a new trial.

IT IS ORDERED THAT THIS CASE BE REVERSED AND REMANDED FOR A NEW TRIAL.

HARTZ, J., concurs.

PICKARD, J., concurs specially.

PICKARD, Judge (specially concurring).

I concur in Judge Black's opinion because I agree that (1) the admission of the little girl's hearsay statements to the social worker violated Respondent's federal right of confrontation as explained in *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), and (2) the admission into evidence of the little girl's hearsay statement to her mother could be viewed as proper. I write separately because I believe the first issue could have been more easily decided under well-established New Mexico evidentiary law. Moreover, because courts are to avoid reaching constitutional issues when not necessary to a disposition, *JMB Retail Properties Co. v. Eastburn*, 114 N.M. 115, 835 P.2d 831 (1992); *Huey v. Lente*, 85 N.M. 597, 514 P.2d 1093 (1973); *see also State v. Self*, 88 N.M. 37, 40, 536 P.2d 1093, 1096 (Ct.App.1975), I believe this case should have been decided under state evidentiary law.

We have a long history in New Mexico, beginning at least with *Self* and continuing through *State v. Barela*, 97 N.M. 723, 643 P.2d 287 (Ct.App.1982); *State v. Taylor*, 103 N.M. 189, 704 P.2d 443 (Ct.App.1985); and *State v. Pacheco*, 110 N.M. 599, 798 P.2d 200 (Ct.App.1990), of recognizing the crucial importance of cross-examination to the truth-seeking function of a criminal trial. Accordingly, these cases have jealously guarded the hearsay exceptions and applied them sparingly. Contrary to the Idaho experience discussed in *Wright*, analysis under our state hearsay rules is very similar to federal constitutional confrontation analysis. We require similar circumstantial guarantees of trustworthiness before admitting hearsay under our residual exceptions. *State v. Pacheco; see State v. Self.* For the reasons stated in the majority opinion, the hearsay statements of the little girl to the social worker do not have the requisite guarantees. Accordingly, they do not qualify for admission under SCRA 1986, 11–804(B)(6).