859 P.2d 1068
**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Robert LANCASTER, Defendant–
Appellant.**

**No. 13820.**

Court of Appeals of New Mexico.

Aug. 10, 1993.

---

Sammy J. Quintana, Chief Public Defender and Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen. and Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

*OPINION*

DONNELLY, Judge.

Defendant appeals his convictions for eight counts of forgery and one count of conspiracy. Although he raises thirteen separate issues, we find Defendant's claim of denial of the right of confrontation dispositive, and reverse and remand for a new trial.

*FACTS*

During June 1990, Michael Hartgraves discovered a number of blank checks missing from his office. The missing checks bore the number of the joint bank account he shared with his wife at the First Interstate Bank of Lea County in Lovington. Shortly thereafter, a number of checks bearing the forged signature of Marilyn Hartgraves were cashed at various stores in southeastern New Mexico and west Texas.

Defendant was prosecuted for forgery as an aider and abettor. Manuela Arenivas, the daughter of the cleaning woman who worked for the Hartgraves, admitted she had testified at Defendant's preliminary hearing that Defendant was the person who had originally obtained the checks; that he asked her if she wanted to make some money; and that Defendant discussed with her the idea of forging the checks. She also testified that Defendant had shown the checks to her at her home; that she had assisted in passing them; and that she split the money obtained from the forged checks with Defendant. Arenivas further admitted that she had testified at Defendant's preliminary hearing that she, together with Natalie Rash and Robert Cortez, had filled out and signed the checks.

At trial Arenivas repudiated her testimony given at Defendant's preliminary hearing and stated that she had found the checks in her mother's house; that Defendant had not shown them to her; and that Defendant was not involved in the forging or passing of the checks. She also testified at trial that she had helped Rash and Cortez fill out the checks and pass them. She further testified at trial that when she was arrested she was sick from heroin withdrawal and that the police told her if she would help them convict Defendant they would recommend that she be given a reduced sentence under a plea agreement. Additionally, she admitted at trial that she had given a statement to the police prior to entering into a plea agreement and that the matters contained in that statement were consistent with the testimony she gave at Defendant's preliminary hearing.

Cortez also testified at Defendant's trial. He stated that in June 1990 he was living with Rash in Lovington. At trial, he denied ever having seen the forged checks and testified that he knew nothing about them. Although Cortez did not testify at Defendant's preliminary hearing, he admitted at trial that he had previously given an

extrajudicial statement to the police confessing to having assisted in the forging of the checks, and that Defendant had shown Arenivas how to write the checks and instructed her concerning the amounts to be placed thereon.

During trial, Rash refused to testify and invoked the Fifth Amendment. She also had previously given a written statement implicating Defendant in the scheme to forge the checks and pass them. The State then moved to introduce Rash's testimony, which had been given to the police, arguing that it had been corroborated by the testimony of Arenivas and the prior statement of Cortez. Over Defendant's objection, Rash's prior statement was read to the jury.

Rash's statement recited that Arenivas and Defendant came to her residence; that Defendant took a checkbook out of his pocket and told Arenivas he wanted her to write some checks; that Defendant hovered over Arenivas, made her practice, and told her to write ten checks; and that she would get a portion of the money obtained from passing the checks and some dope. Her statement also recited that Defendant had instructed her concerning how she should fill in the blank checks; that Cortez had endorsed each of the checks; and that after the checks were written, Defendant retrieved the checkbook and Arenivas had taken the checks. Finally, Rash was shown a photograph of Defendant, and she identified him.

Defendant did not testify at trial; however, he called several defense witnesses who testified to having been with him at various times on June 16, 1990, the date each of the forged checks was dated and apparently written. His daughter, Anna Lancaster, also testified that she had been with Defendant during portions of the next day.

## I. *Admissibility of Rash's Statement*

■ Defendant argues that the trial court erred in permitting Rash's written, extrajudicial statement to be read to the jury, and that the admission of this testimony violated his right of confrontation contrary to the Sixth and Fourteenth Amend-

ments to the United States Constitution, and Article II, Section 14 of the New Mexico Constitution.

■ In reviewing claims asserting a violation of the Confrontation Clause under the United States and New Mexico Constitutions, the trial court's ruling as to the reliability of an out-of-court statement will be upheld unless it is clearly erroneous. *State v. Sanchez*, 112 N.M. 59, 62, 811 P.2d 92, 95 (Ct.App.1991). Whether a violation of an accused's right of confrontation has occurred depends upon the facts of each particular case. *See State v. Martinez*, 99 N.M. 48, 51, 653 P.2d 879, 882 (Ct.App.), *cert. denied*, 99 N.M. 47, 653 P.2d 878 (1982).

The opportunity for cross-examination secured by the Confrontation Clause is critical to insure the integrity of the fact-finding process. *See Kentucky v. Stincer*, 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987). The right of cross-examination, protected by the Confrontation Clause, is the principal means for testing the truthfulness and credibility of a witness. *Id.* It has been described as the most important element of confrontation and an essential right intolerant of infringement, *In re Troy P.*, 114 N.M. 525, 529, 842 P.2d 742, 746 (Ct.App.1992), and a "'fundamental right [which] is made obligatory on the States by the Fourteenth Amendment.'" *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965) (quoting *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963)). In New Mexico, this right is also rooted in our state constitution. *See Valles v. State*, 90 N.M. 347, 350, 563 P.2d 610, 613 (Ct.App.), *cert. denied*, 90 N.M. 637, 567 P.2d 486 (1977).

The State, relying upon *State v. Earnest*, 106 N.M. 411, 744 P.2d 539, *cert. denied*, 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987), argues that admission of the statement was proper under the circumstances herein, because the statement possessed sufficient indicia of reliability to overcome the presumption of unreliability, and was corroborated by the testimony of Arenivas

and Cortez, who were called as witnesses at Defendant's trial and were subject to cross-examination.

In the 1987 *Earnest* decision, our Supreme Court departed from its earlier decision in *State v. Earnest*, 103 N.M. 95, 703 P.2d 872 (1985), and upheld the trial court's admission of a statement which had been given by a codefendant following both his and the defendant's arrest. At trial, the individual who had given the statement refused to testify, and the trial court permitted the statement to be admitted into evidence. In upholding the trial court's ruling, our Supreme Court held that the statement was sufficient to overcome the presumption of unreliability which attaches to the extrajudicial statement of a codefendant, and that the statement bore sufficient indicia of reliability to satisfy Confrontation Clause concerns. *Earnest*, 106 N.M. at 412, 744 P.2d at 540; *see also Sanchez*, 112 N.M. at 63, 811 P.2d at 96; *State v. Huerta*, 104 N.M. 340, 342, 721 P.2d 408, 410 (Ct.App.1986). In support of its determination that the statement contained sufficient indicia of reliability, the Court pointed to the fact that the witness had not been offered any leniency in exchange for the giving of his statement, the fact that the statement was strongly against the witness's penal interest, that the statement of the witness did not attempt to shift responsibility from himself to his accomplices, and the fact that there was independent evidence presented at trial which tended to corroborate the statement. *Earnest*, 106 N.M. at 412, 744 P.2d at 540.

Contrasted with the statement given in *Earnest*, Rash's out-of-court statement in the present case contained few of the factors found to have provided the indicia of reliability discussed in *Earnest*. In her statement, Rash recited that Arenivas and Defendant had sought her out and asked her to write some checks, and that Arenivas told her she would not get "busted" for writing the checks—only Arenivas and Defendant would be implicated if they were "busted." Rash also added that she did not pass any of the checks; that Defendant was "ramrodding" the forging of the

checks; that he "stood over" her and told her what to write; that she "did not do nothing"; "I did not know nothing," and "I never got anything out of it."

Careful scrutiny must be given to the out-of-court statements of codefendants given in a custodial setting. *See State v. Latimer*, 171 Ariz. 439, 441, 831 P.2d 438, 440 (Ct.App.1992). Unlike Arenivas's preliminary hearing testimony introduced at trial by the State, Rash's prior statement was not given under oath and was presumptively unreliable. Viewed in its totality, Rash's prior statement largely downplays her role in connection with the writing or passing of the checks, and seeks to shift the blame to Defendant and others as the principal participants in the offenses. Moreover, a key factor, which existed in respect to the admission of the testimony of Arenivas and Cortez, was missing in the admission of Rash's statement. Both Arenivas and Cortez were available for cross-examination by Defendant at trial, and Arenivas was subject to cross-examination concerning her earlier testimony at Defendant's preliminary hearing. Rash, however, was not available to be cross-examined at Defendant's trial regarding her extrajudicial statement.

Here, the evidence relied upon by the State to link Defendant to the charged offenses consisted principally of the inconsistent statements of Arenivas and Cortez, together with the out-of-court statement of Rash. Apart from the testimony or statements subsequently disavowed by Arenivas and Cortez, the State cites no other independent corroborative evidence which tends to lend reliability to Rash's untested and unsworn extrajudicial statement. Under these circumstances, we conclude that the evidence relied upon by the State for admission of Rash's hearsay statement did not overcome the presumption of unreliability. *See State v. Crislip*, 109 N.M. 351, 355, 785 P.2d 262, 266 (Ct.App.) (error to admit statement of unavailable codefendant where, among other things, there was no direct, independent evidence at trial to corroborate the statement and where the declarant was not shown to be free of

motive to mitigate own culpability by implicating the defendant), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1989).

In *Idaho v. Wright,* 497 U.S. 805, 814–15, 110 S.Ct. 3139, 3145–47, 111 L.Ed.2d 638 (1990), the United States Supreme Court indicated that there were two ways in which an out-of-court statement might be shown to bear sufficient indicia of reliability to justify its admission notwithstanding a challenge based on the Confrontation Clause. The first is " 'where the evidence falls within a firmly rooted hearsay exception,' " and the second is where there has been a showing that the evidence has " 'particularized guarantees of trustworthiness.' " *Id.* at 815, 110 S.Ct. at 3147 (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). The Court also noted that the particularized guarantees of trustworthiness necessary for admission of such a statement must be shown from the totality of the circumstances that surround the making of the statement and which show that the declarant is especially worthy of belief. *Id.* at 819, 110 S.Ct. at 3148; *see also Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539 (in determining whether hearsay statement is sufficient to overcome Confrontation Clause requirements, prosecution must demonstrate declarant's unavailability, and the witness's statement must be shown to bear adequate indicia of reliability).

■ The State argues that Rash's statement was properly admitted because it contained sufficient indicia of reliability in that it contained sufficient details which can be said to have been "interlocked" with similar details described in the testimony given by Arenivas at Defendant's preliminary hearing and with the extrajudicial statement given by Cortez to the police. We find these arguments unpersuasive under the circumstances existing here.

Arenivas's testimony given at Defendant's preliminary hearing was given pursuant to a plea bargain. In exchange for testifying against Defendant, Arenivas received a sentence of one year in prison and two years in a drug-rehabilitation program; ten years of the sentence were deferred.

Under the record before us, we do not think the prior inconsistent statements of Arenivas and Cortez can properly be used to bootstrap the introduction of Rash's statement, and, absent other independent corroborative evidence, overcome the presumption of unreliability. Thus, we conclude it was error to admit Rash's hearsay statement. Nor do we believe the error here can be deemed to be harmless beyond any reasonable doubt. *See Clark v. State,* 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991) (error not deemed harmless if there is a reasonable possibility that evidence complained of may have contributed to the defendant's conviction). In *Lee v. Illinois,* 476 U.S. 530, 546, 106 S.Ct. 2056, 2065, 90 L.Ed.2d 514 (1986), the United States Supreme Court determined that a codefendant's confession implicating a defendant lacked sufficient indicia of reliability to overcome the presumption of unreliability. The Court noted, however:

> If those portions of the codefendant's purportedly "interlocking" statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment.

*Id.* at 545, 106 S.Ct. at 2064.

In the instant case Defendant did not testify at trial and had not given any prior statement. Thus, no comparison of interlocking details between Rash's statement and a statement by Defendant was possible.

Since the admission of Rash's statement violated Defendant's constitutional right of confrontation under both the United States and New Mexico Constitutions and requires reversal of Defendant's convictions, we need not address the other issues raised by Defendant on appeal, except his claim of insufficiency of the evidence.

## II. *Sufficiency of the Evidence*

■ We review Defendant's claim concerning the sufficiency of the evidence be-

cause this contention, if found meritorious, would result in dismissal of the charges against him and obviate the necessity for a new trial.

Defendant contends that the evidence presented at trial was insufficient to support his convictions because the credibility and nature of the testimony brought out at trial were unreliable, untrustworthy, and lack credibility. In reviewing challenges to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and resolve all conflicts and indulge in all reasonable inferences properly derived therefrom in the light most favorable to support the decision of the fact finder. *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).

The prosecution theory at trial was that Defendant and others were participants in the forgery, and that Defendant acted as an aider and abettor. To establish that Defendant conspired to commit forgery, the State was required to prove that Defendant, together with one or more persons, agreed to commit the crime of forgery.

Arenivas, although repudiating her preliminary hearing testimony concerning Defendant's participation in the forging and passing of the checks, nevertheless admitted that she had previously told the police and testified that Defendant was the person who had initially obtained the checks and discussed with her the idea of forging the checks. While she testified that her earlier statements regarding Defendant's culpability were false, her earlier testimony concerning Defendant's role in the offenses was nevertheless admissible against Defendant at trial. *State v. Maestas,* 92 N.M. 135, 144–45, 584 P.2d 182, 191–92 (Ct.App. 1978) (prior inconsistent statements of witness given under oath may comprise substantive evidence). Thus, we are not persuaded that Arenivas's earlier statement could not properly be considered by the jury as substantive evidence.

The Rules of Evidence adopted by our Supreme Court are substantially patterned after the Federal Rules of Evidence as initially adopted by the United States Supreme Court and subsequently modified by Congress. *See* Richard A. Gonzales, *Evidence,* 11 N.M.L.Rev. 159, 159–60 (1980–81); *see also State ex rel. Attorney General v. First Judicial Dist. Court,* 96 N.M. 254, 260, 629 P.2d 330, 336 (1981); Murl A. Larkin, *New Mexico Rules of Evidence,* 801–1 to –2 (John Wentworth rev. ed. 1991). SCRA 1986, 11–801(D)(1)(a) defines those statements which are not hearsay, noting that "[a] statement is not hearsay, if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with his testimony."

Contrasted with the wording of SCRA 11–801(D)(1)(a), the comparable Federal Rule of Evidence 801(d)(1)(A) declares that

[a] statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, *and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition....* [Emphasis added.]

As observed by 2 Stephen A. Saltzburg & Michael M. Martin, *Federal Rules of Evidence Manual* 250 (5th ed. 1990):

Present Federal law generally permits the use of prior inconsistent statements of a witness for impeachment only. Subdivision (d)(1) as proposed by [the United States Supreme] Court would permit such statements to be admissible as substantive evidence.... The Rule as approved [by Congress] draws a distinction between types of prior inconsistent statements and allows only those made before a grand jury, or at a trial or hearing, or in a deposition, to be admissible for their truth.

█ The language of SCRA 11–801(D)(1)(a), adopted by our Supreme Court, omits the restrictive limitations imposed by Congress in its federal rule counterpart on the use of a witness's prior inconsistent statements offered as substantive evidence. *See* Stephen A. Saltzburg & Michael M. Martin, *supra,* at 250; Murl A. Larkin, *supra,* at 801–8; *see also Maestas,*

92 N.M. at 144–45, 584 P.2d at 191–92. We conclude that under the New Mexico Rules of Evidence, unless excluded on other grounds, a prior inconsistent statement may be introduced as substantive evidence. The United States Supreme Court has upheld the use of a similar statement as substantive evidence in *California v. Green*, 399 U.S. 149, 169, 90 S.Ct. 1930, 1941, 26 L.Ed.2d 489 (1970).

Cortez also testified at Defendant's trial. He testified that he had never seen the forged checks and knew nothing about them, but admitted that he had previously given a statement to the police admitting that he had participated in the forgery of the checks. He admitted under questioning by the prosecution that in his prior statement he had told the police that Defendant had played a role in the forging of the checks and had shown Arenivas how the checks should be filled out and the amounts which should be inserted thereon. The prior inconsistent statement of Cortez, together with that of Arenivas, could properly be considered as substantive evidence against Defendant on each of the counts submitted to the jury.

We find Defendant's arguments, that the credibility of the testimony of Arenivas and Cortez rendered such testimony inadmissible, misplaced. The weight to be accorded such testimony is a matter entrusted to the jury at trial, not this Court on appeal. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319 (choice of whom to believe rests with the jury). This testimony, although later retracted by Arenivas and Cortez, could properly be evaluated by the jury to determine the truth of each of the charges against Defendant. Thus, we deny Defendant's challenge to the sufficiency of the evidence.

*CONCLUSION*

For the reasons discussed above, we reverse and remand for a new trial.

IT IS SO ORDERED.

MINZNER, C.J., and BLACK, J., concur.