926 P.2d 784

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Rick LOPEZ, Defendant–Appellant.**

No. 15920.

Court of Appeals of New Mexico.

July 22, 1996.

Certiorari Denied Sept. 26,
1996 and Oct. 2, 1996.

Tom Udall, Attorney General and Margaret McLean, Ass't Attorney General, Santa Fe, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender and Christopher Bulman, Ass't Appellant Defender, Santa Fe, for Defendant–Appellant.

### OPINION

PICKARD, Judge.

1. In this case we examine the application of the excited utterance exception to the hearsay rule and the impact of the confrontation and due process clauses on the admissibility of statements which are exceptions to the hearsay rule. We hold that, under the New Mexico Constitution, the State must make a two-pronged showing of (1) necessity and (2) reliability before out-of-court declarations may be admitted against a defendant in a criminal case. We also hold that the showing made in this case was sufficient.

*FACTS*

2. In the early morning hours of February 27, 1994, Officer Brown was dispatched to a domestic violence call. The request for assistance came from a pay phone near an apartment complex. When Officer Brown arrived, the caller, Defendant's sister, ran to the patrol car. She was crying, frantic, and yelling for help. She appeared to be intoxicated. She yelled, "Help me. My brother is killing his girlfriend.... Please help me. Please help me. He won't stop hitting her."

Defendant's sister directed Officer Brown to the apartment.

3. When Officer Brown arrived at the apartment, he found the victim unconscious on the kitchen floor. The kitchen was in disarray, indicating some kind of altercation. The telephone had been torn from the wall. Defendant was standing in the living room. His sister said to Officer Brown, "That's him right there," and indicated Defendant. Officer Brown asked, "Him?" and pointed to Defendant. Defendant's sister said, "Yes, that's him." Officer Brown handcuffed Defendant and had Defendant sit on the couch.

4. Officer Brown returned to the victim, who had regained consciousness in the kitchen. The victim was "groggy" and "kind of unfocused." Officer Brown questioned the victim, who indicated that she had been injured in a fight with Defendant. She stated that Defendant's sister had come to the apartment after being out drinking. Defendant's sister had gone into the bathroom because she did not feel well. The victim followed her into the bathroom to assist. Defendant started an argument with the victim while she was in the bathroom assisting Defendant's sister. Defendant grabbed the victim by the hair, dragged her out of the bathroom, and began to hit and kick her. Defendant's sister attempted to call the police, but Defendant tore the telephone from the wall to stop her. The victim remembered Defendant hitting her in the kitchen, but did not remember anything else until she regained consciousness after Officer Brown arrived.

5. While rescue personnel were assisting the victim, Officer Brown spoke with Defendant. Defendant stated that, during the argument, the victim had hit him first. Defendant admitted that he hit her back, but he did not know how she was injured. Defendant was not visibly injured.

6. Officer Brown testified that Defendant, Defendant's sister, and the victim were all intoxicated. He later recanted his testimony stating that the Victim admitted she had consumed "a couple of beers," but was not drunk. Officer Brown also testified that Defendant smelled of alcohol, but that he was unable to determine the extent of Defendant's intoxication.

7. Defendant was charged with aggravated battery and assault. Prior to trial, Defendant attempted to exclude the hearsay evidence of the victim and Defendant's sister from being offered through Officer Brown. After listening to Defendant's motion to exclude the evidence, the State reduced the charge to simple battery, a petty misdemeanor. Defendant based his motion on his right to confront the witnesses against him, as guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution, as well as on the due process clauses of each constitution.

8. At the pre-trial motion to exclude, the State indicated that its practice was to mail subpoenas to its witnesses and, if the witnesses have moved, the State will receive a return statement showing the witnesses' new addresses. When this case was first set for trial, the State mailed the subpoenas, but received no information in return. Prior to the second trial setting, the State both mailed the subpoenas and had process servers try to personally serve them on the victim and Defendant's sister. The process servers were unsuccessful. The State's attorney told the court:

> We have not been able to serve these subpoenas. They have moved. We have no addresses. We have nothing.... We have not been able to find any new address for the victims. We have not been able to find the victims at all. ... We cannot secure their presence. We can't find their address. We can't find any information to attempt to locate them. I've asked the officer if he knew anything more about the victims to attempt to locate them, and he did not. There's nothing more that we can do to try to find these people. They are not available as far was we can find.

9. Defendant did not object to the State's recitation or ask to have the State's attorney testify to allow for cross-examination. Neither did Defendant argue that any witnesses, such as clerical staff or process servers, be produced for examination or cross-examination. Rather, Defendant simply argued that

the State's showing was an insufficient legal basis on which to rule that the victim and Defendant's sister were unavailable to testify in person.

10. The State justified the admission of the statements as excited utterances, and thus exceptions to the hearsay rule. *See* NMRA 1996, 11–803(B). Defendant argued that too much time had passed to qualify the statements as exceptions to the hearsay rule and that the victim's and Defendant's sister's intoxication made their statements unreliable. The metropolitan court permitted Officer Brown to testify about the victim's and Defendant's sister's statements. Defendant did not argue that there was any distinction between the victim's statement, made in response to Officer Brown's questions, and Defendant's sister's statements, made spontaneously when she saw Officer Brown. Defendant's sister's later written statement was excluded from evidence on Defendant's objection because the requisite spontaneity was lacking. The victim's later tape-recorded statement was not even offered into evidence. Defendant was found guilty of the charge of misdemeanor battery. The conviction was affirmed on appeal of record to the district court.

*DISCUSSION*

11. Defendant claims that the metropolitan court violated his federal and state constitutional rights by allowing Officer Brown to testify about the out-of-court statements of Defendant's sister and the victim. *See* U.S. Const. amends. VI & XIV; N.M. Const. art. II, §§ 14 & 18. In *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the United States Supreme Court held that the confrontation clause does not require the prosecution to either produce a declarant at trial or show the declarant is unavailable when seeking to admit excited utterances. According to *White,* therefore, Defendant's federal rights arguably have not been violated. Thus, to determine whether his state rights were violated, we must first consider whether New Mexico should follow the United States Supreme Court's holding in *White*—that unavailability of the declarant need not be shown to admit excited-utterance statements against an accused. We hold that

New Mexico should not follow *White.* Second, we address the efforts by the State to secure the presence of the victim and Defendant's sister and hold that they were sufficient under the circumstances of this case. Third, we explore whether the statements made by Defendant's sister and the victim were properly ruled to be excited utterances by the metropolitan court and hold that the metropolitan court did not err in ruling that they were, given the nature of Defendant's preservation of this issue. We therefore affirm.

*STANDARD OF REVIEW*

12. Defendant relies on *State v. Ruiz,* 120 N.M. 534, 536, 903 P.2d 845, 847 (Ct.App.), *cert. denied,* 120 N.M. 498, 903 P.2d 240 (1995), for the proposition that objections to the admission of hearsay evidence raised under the confrontation clause implicate constitutional concerns and must be reviewed de novo. On the other hand, the State simply asserts that the issue is one of admission of hearsay for which the standard of review is abuse of discretion. *See In re Troy P.,* 114 N.M. 525, 530, 842 P.2d 742, 747 (Ct.App. 1992); *State v. Martinez,* 99 N.M. 48, 51, 653 P.2d 879, 882 (Ct.App.), *cert. denied,* 99 N.M. 47, 653 P.2d 878 (1982).

13. Neither party's rendition is an accurate portrayal of all of the standards of review that are involved in this case. The first question that we address—whether to follow *White* as a matter of New Mexico constitutional law—is a question of law. No issue of evidence or trial-court discretion is involved in determining what the law in New Mexico should be. Review of questions of law is de novo. *See Duncan v. Kerby,* 115 N.M. 344, 347–48, 851 P.2d 466, 469–70 (1993). The second question that we address is whether there was an adequate showing of unavailability. Like many mixed questions of fact and law, this question involves both determining what efforts were made to obtain the presence of the witness, a factual question that is reviewed under substantial evidence principles affording discretion to the trial court, and whether those efforts are sufficient under the constitution, a legal question that is reviewed de novo. *Cf. State v. Attaway,* 117 N.M. 141, 144–46, 870 P.2d

103, 106–08 (1994) (exigent circumstances); *Duncan*, 115 N.M. at 347–48, 851 P.2d at 469–70 (ineffective assistance of counsel); *State v. Goss*, 111 N.M. 530, 533–34, 807 P.2d 228, 231–32 (Ct.App.) (search and seizure), *cert. denied*, 111 N.M. 416, 806 P.2d 65 (1991). The third question we address is also two pronged. We must first review whether the trial court could find that the out-of-court statements were made under factual circumstances that bring them within exceptions to the hearsay rule, and that issue is reviewed for abuse of discretion. *Troy P.*, 114 N.M. at 530, 842 P.2d at 747; *Martinez*, 99 N.M. at 51, 653 P.2d at 882. Next, we determine whether the hearsay exception produces sufficiently reliable evidence to satisfy our confrontation or due process clauses, and that is a legal issue. *See Ruiz*, 120 N.M. at 536, 903 P.2d at 847 (citing *State v. Gallegos*, 109 N.M. 55, 65–66, 781 P.2d 783, 793–94 (Ct. App), *cert. denied*, 108 N.M. 771, 779 P.2d 549 (1989), for the proposition that indicia-of-reliability determinations are questions of law).

### CONFRONTATION CLAUSE

■ 14. The Sixth Amendment to the United States Constitution and Article II, § 14 of the New Mexico Constitution provide that a criminal defendant will have the opportunity to confront the witnesses against him. *Troy P.*, 114 N.M. at 528, 842 P.2d at 745. The right to cross-examination is viewed as the most important element of the right of confrontation. *Id.* at 529, 842 P.2d at 746. The right of cross-examination is the principal means for testing the truth and credibility of a witness and is considered "critical to insure the integrity of the fact-finding process." *State v. Lancaster*, 116 N.M. 41, 43, 859 P.2d 1068, 1070 (Ct.App. 1993).

15. Before *White*, it was generally thought that prior to dispensing with critical elements of the confrontation clause, there had to be good reason to do so (necessity) and equivalent guarantees of reliability for the evidence sought to be admitted without cross-examination or face-to-face confrontation. *See State v. Christian*, 119 N.M. 776, 782–83, 895 P.2d 676, 682–83 (Ct.App.) (in-

volving scientific laboratory records and holding that the necessity prong may be satisfied by showing unavailability or that the utility of cross-examination is minimal, that other evidence offers an opportunity to test the reliability of the questioned evidence, or that public policy considerations excuse the production of the witness), *cert. denied*, 119 N.M. 514, 892 P.2d 961 (1995); *Martinez*, 99 N.M. at 51–52, 653 P.2d at 882–83 (adopting the two-pronged test of *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980), pursuant to which the State must first show that the declarant is unavailable and then that the hearsay statements sought to be admitted have adequate indicia of reliability, generally because the hearsay falls within a firmly rooted exception).

16. Recent United States Supreme Court cases, however, cast doubt on the use of the "unavailability prong" in order to admit hearsay testimony that falls within a recognized hearsay exception against a defendant. *White*, 502 U.S. at 355, 112 S.Ct. at 742. The Court found that there were hearsay statements which could be admitted against the defendant even if the declarant was available to testify. *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (evidence from nontestifying co-conspirator); *White*, 502 U.S. 346, 112 S.Ct. 736 (excited utterance and statements made while procuring medical treatment). The rationale for admitting such hearsay is that these types of declarations have such compelling indicia of reliability that cross-examination cannot reasonably be considered to impact their value to the fact finder. *White*, 502 U.S. at 355–56, 112 S.Ct. at 742–43. If the hearsay evidence sought to be admitted falls into a recognized hearsay exception, the Supreme Court reasoned that the confrontation clause is satisfied because the exceptions have been found to guarantee reliability. *Id.* at 356, 112 S.Ct. at 742–43.

■ 17. Federal decisions do not control the nature and scope of the rights guaranteed by the New Mexico Constitution. *City of Farmington v. Fawcett*, 114 N.M. 537, 544, 843 P.2d 839, 846 (Ct.App.), *cert. quashed*, 114 N.M. 532, 843 P.2d 375 (1992). New

Mexico may provide its citizens with a greater degree of protection under the state constitution than would be accorded under the federal constitution. *Id.* at 544–45, 843 P.2d at 846–47.

■ 18. We are not persuaded that the *White* decision gives sufficient importance to the values sought to be protected by the confrontation clause. *See generally* Eleanor Swift, *Smoke and Mirrors: The Failure of the Supreme Court's Accuracy Rationale in White v. Illinois Requires a New Look at Confrontation,* 22 Cap.U.L.Rev. 145 (1993) [hereinafter Swift]; Patricia W. Bennett, *After White v. Illinois: Fundamental Guarantees to a Hollow Right to Confront Witnesses,* 40 Wayne L.Rev. 159 (1993). We are particularly concerned that a criminal prosecution, with its potentially severe consequences, should be a search for the truth. That search should be characterized in our adversary process by the parties' presentation of their best evidence so that a jury will have available as much information as possible to decide the case in the correct manner. *See* Swift, *supra,* at 150–51, 161–64.

19. We are equally concerned that strict enforcement of the right of confrontation increases the apparent legitimacy of the trial process, especially to defendants who may claim to be oppressed by it. *See id.* at 172; *see also High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 40, 888 P.2d 475, 486 (Ct.App.) (" '[J]ustice should not only be done, but should manifestly and undoubtedly be seen to be done.' ") (quoting *Liteky v. United States,* 510 U.S. 540, 565, 114 S.Ct. 1147, 1162, 127 L.Ed.2d 474 (1994) (Kennedy, J., concurring) (internal quotations omitted)), *certs. denied,* 119 N.M. 20, 888 P.2d 466 (1994). We are also concerned that dispensing with any necessity or unavailability requirement would allow prosecutors to distort the search for the truth as a matter of tactical advantage, such as by substituting a high-performance witness to the declarant's statement for a low-performance declarant. *See* Swift, *supra,* at 166. Finally, the long-standing due-process principle that extra pains should be taken to avoid the conviction of the innocent persuades us not to abandon our existing law requiring a showing of ne-

cessity or unavailability before hearsay may be admitted in a criminal trial. *See id.* at 182–83.

20. Accordingly, we believe that the decision in *Roberts* articulates the proper standard for New Mexico with regard to the rights of a criminal defendant. Therefore, we join those jurisdictions which have declined to follow the United States Supreme Court's decision in *White* that unavailability need not be shown. *See State v. Ortiz,* 74 Haw. 343, 845 P.2d 547 (1993); *State v. Storch,* 66 Ohio St.3d 280, 612 N.E.2d 305 (1993). In *Ortiz,* the Hawaii Supreme Court explained that:

A showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants. Although excited utterances have certain guarantees of reliability, we also recognize that the right to confront an accuser should not be abandoned simply because the alleged incriminating statement was made spontaneously. Thus, we choose to follow the Supreme Court test set forth in *Roberts.*

*Ortiz,* 74 Haw. at 362, 845 P.2d at 556. The Ohio Supreme Court specifically criticized *White* on the grounds that (1) the sweep of the opinion was unnecessary in a case in which the child witness appeared unavailable due to an inability to testify in any event, and (2) the basis for the opinion—that cross-examination would obviously not add much to the integrity of the fact-finding process in the case of firmly rooted hearsay exceptions—was "not obvious fact to many to have litigated such cases." *Storch,* 66 Ohio St.3d at 291, 612 N.E.2d at 313.

21. We therefore reaffirm our decision in *Martinez,* 99 N.M. at 52, 653 P.2d at 883. In so doing, we note that our Supreme Court's most recent writing on this subject adhered to the *Martinez* formulation although the Supreme Court was clearly aware of *White. See State v. Woodward,* 121 N.M. 1, 8–9, 908 P.2d 231, 238–39 (1995). Thus, when a hearsay declarant is not present for cross-examination at trial, the confrontation clause of the New Mexico Constitution requires a showing that he or she is unavailable. *See Martinez,* 99 N.M. at 52, 653 P.2d at 883. Even then,

the declarant's statement is admissible only if it bears adequate indicia of reliability. *Id.* It is to these dual requirements that we now turn.

## UNAVAILABILITY

22. Defendant maintains that the State failed to show reasonable diligence and good faith efforts to locate and produce Defendant's sister and the victim as witnesses at trial. As the party seeking to introduce the testimony of the victim and Defendant's sister, the burden was on the State to demonstrate that they could not be found and were unavailable. *State v. Ewing,* 97 N.M. 235, 238, 638 P.2d 1080, 1083 (1982). The trial court has the discretion to decide the factual component of whether a sufficient showing of unavailability has been made. *State v. Martinez,* 102 N.M. 94, 97, 691 P.2d 887, 890 (Ct.App.), *cert. denied,* 102 N.M. 88, 691 P.2d 881 (1984).

23. Defendant points to the fact that no investigator or police officer was assigned to find the victim and Defendant's sister. According to Defendant, the effort of mailing subpoenas to their last known address, attempting personal service, and questioning the officer regarding his knowledge of the witnesses' whereabouts does not rise to the level of reasonable diligence. Defendant submits that reasonable diligence under the circumstances would require the State to assign an investigator or police officer to the task. The investigator or officer should have interviewed the victim's and Defendant's sister's neighbors, attempted to contact possible relatives, contacted social service agencies, and called the post office. According to Defendant, the investigator could also have used social security numbers to ascertain whether the victim or Defendant's sister were employed and then serve the subpoenas at their work.

24. Defendant argues that the assertions by the State about its efforts failed to establish that the State's efforts were reasonable. Moreover, Defendant claims that the State's failure to appoint an investigator to conduct an investigation into the whereabouts of the victim and Defendant's sister meant that Defendant was denied the opportunity to effectively cross-examine the investigator to determine whether the efforts made were reasonable. However, we note that Defendant never objected to any lack of cross-examination and he accepted the State's showing below. *See State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (to preserve an issue for appeal, defendant must make a timely objection that specifically apprises the trial court of the nature of the error). Thus, we do not consider the entire line of argument that questions the State's showing or asserts that it should have been subject to Defendant's cross-examination.

25. When determining whether the State was diligent in attempting to produce a witness for trial, the trial court may take into consideration the totality of the circumstances. *State v. Vialpando,* 93 N.M. 289, 292, 599 P.2d 1086, 1089 (Ct.App.), *cert. denied,* 93 N.M. 172, 598 P.2d 215 (1979). The lengths to which the prosecution must go to produce a witness is a question of reasonableness. *California v. Green,* 399 U.S. 149, 189 n. 22, 90 S.Ct. 1930, 1951 n. 22, 26 L.Ed.2d 489 (1970). In determining reasonableness, the trial court should balance the efforts undertaken by the State with the likely utility of cross-examination under the facts of the case. In a case in which cross-examination is shown to be essential, greater efforts would be required. Conversely, where the defense may make its points in other ways, appropriate steps to locate the witness may be less vigorous. *See Christian,* 119 N.M. at 782–83, 895 P.2d at 682–83 (necessity prong may be satisfied by showing unavailability or that the utility of cross-examination is minimal, that other evidence offers an opportunity to test the reliability of the questioned evidence, or that public policy considerations excuse the production of the witness); *Ortiz,* 74 Haw. at 361–64, 845 P.2d at 556–57 (vigorous and appropriate steps must be taken to locate the witness).

26. In measuring the utility of cross-examination, it is helpful to use the four potential dangers generally ascribed to hearsay testimony and to evaluate these dangers in the context of the facts of the particular case. The dangers are:

(1) Ambiguity—the danger that the meaning intended by the declarant will be misinterpreted by the witness and hence the jury; (2) Lack of candor—the danger the declarant will consciously lie; (3) Faulty memory—the danger that the declarant simply forgets key material; and (4) Misperception—the danger that the declarant misjudged, misinterpreted, or misunderstood what he saw.

*State v. Williams,* 117 N.M. 551, 560, 874 P.2d 12, 21 (1994) (quoting *State v. Taylor,* 103 N.M. 189, 197, 704 P.2d 443, 451 (Ct.App. 1985)). In this case, the express rationale of allowing excited utterances into evidence as an exception to the hearsay rule is primarily to negate danger (2). It is thought that declarants in the heat of their excitement will not have time to consciously lie. *State v. Maestas,* 92 N.M. 135, 141, 584 P.2d 182, 188 (Ct.App.1978). The other dangers are somewhat present in this case, particularly the danger of misperception inasmuch as the testimony was that the victim and Defendant's sister were intoxicated. However, the degree of intoxication was explored with Officer Brown, thus lessening the utility of cross-examination on this point.

27. Nonetheless, because of the presence of some danger, we believe that some showing of unavailability was required. In this case, the State mailed subpoenas and attempted personal service on the victim and Defendant's sister in an effort to procure their in-court testimony. This method had successfully produced results for the State in the past. The police officer who talked with the victim and Defendant's sister at the scene of the arrest was questioned, but he was unaware of their whereabouts. This case arose out of an instance of domestic violence, and it was being prosecuted as a petty misdemeanor. The call for police assistance came from Defendant's sister, who was present when Defendant beat the victim. Under the totality of the circumstances, we hold that the State's efforts to produce the victim and Defendant's sister for in-court testimony were reasonable and diligent. *Cf. State v. Waits,* 92 N.M. 275, 277, 587 P.2d 53, 55 (Ct.App.1978) (State was not required to use formal methods of securing witness's attendance where less formal methods were successful in the past).

## INDEPENDENT INDICIA OF RELIABILITY

28. Having determined that the State made a sufficient showing of the victim's and Defendant's sister's unavailability to testify, we now consider whether the testimony of Officer Brown regarding the victim's and Defendant's sister's statements on the night of the arrest was admissible hearsay. Hearsay is generally precluded from admission by the New Mexico Rules of Evidence. NMRA 1996, 11–802. However, NMRA 11–803(B) makes an exception for an excited utterance relating to a startling event made while the declarant was under the stress of the event. *Troy P.,* 114 N.M. at 529, 842 P.2d at 746.

29. An excited utterance is admissible as an exception to the general rule excluding hearsay because it is assumed that a startling event renders the observer incapable of reflection and fabrication of a response. *Id.* The excited utterance exception to the hearsay rule is firmly rooted in evidentiary jurisprudence. *White,* 502 U.S. at 355 n. 8, 112 S.Ct. at 742 n. 8. Where the proffered evidence falls within a firmly rooted hearsay exception, reliability can be inferred. *Woodward,* 121 N.M. at 9, 908 P.2d at 239. The admissibility of an excited utterance as hearsay depends upon the circumstances of the case. *State v. Robinson,* 94 N.M. 693, 697–98, 616 P.2d 406, 410–11 (1980).

30. Officer Brown testified that Defendant's sister was crying, hysterical, and yelling for help when Officer Brown arrived at the apartment complex. The victim was apparently unconscious on the floor when Officer Brown came to the apartment, but she regained consciousness while Officer Brown was there. Given the circumstances surrounding Defendant's sister's attempts to call the police and the victim's comments after a severe beating, the trial court could have concluded that the statements made by the victim and Defendant's sister bore sufficient indicia of reliability to warrant their introduction as excited utterances.

31. Defendant challenges the victim's statements because she had just regained consciousness and was groggy and unfocused while answering Officer Brown's questions. The admissibility of an excited utterance is a factual question and depends on the circumstances surrounding the declaration. *Id.* at 697–98, 616 P.2d at 410–11. There is no set time period during which statements made are considered excited utterances. *Id.* Instead, the test is whether the victim was under the stress and strain of the excitement caused by the event of the beating. *See Maestas,* 92 N.M. at 140–41, 584 P.2d at 187–88.

32. In this case, the victim had just regained consciousness after being severely beaten. Her statements to Officer Brown were made immediately after regaining consciousness. The evidence of the victim's grogginess or unfocused responses actually supports admission of the statements because they suggest that the victim was in no mental state to fabricate a story.

33. On appeal, for the first time, Defendant also suggests that the victim's statements in response to police questioning are precisely the type of declarations that should not be allowed into evidence because they were not spontaneous, but rather were answers provided to a police interview. While we share Defendant's concern, we note that he did not articulate this concern to the trial court. *See Lucero,* 104 N.M. at 590, 725 P.2d at 269 (requirement of timely objection that specifically apprises the trial court of the nature of the error). Nor do we view the admission of the victim's statements as fundamental error, thus excusing the absence of a timely and specific objection. *See State v. Jett,* 111 N.M. 309, 314, 805 P.2d 78, 83 (1991) (doctrine of fundamental error applies in limited circumstances, such as when defendant's guilt is so questionable that it would shock the conscience to permit the conviction to stand). In light of Officer Brown's own observations, together with Defendant's sister's properly admitted statements, this case does not call for the application of the fundamental error doctrine. The trial court did not commit reversible error in admitting Officer Brown's testimony about either the victim's or Defendant's sister's statements to Officer Brown at the scene as excited utterances. Nor were Defendant's confrontation rights or due process rights violated.

*CONCLUSION*

34. Defendant's conviction is affirmed.

35. **IT IS SO ORDERED.**

FLORES and BOSSON, JJ., concur.